**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRITC OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 17-06548 |
| Fayyaz Karim and Lisa Karim, ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| _____) | Honorable Deborah L. Thorne |
| Fayyaz Karim and Lisa Karim, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Adversary No. 17 A 00380 |
| v. ) | |
| ) | |
| Bayview Loan Servicing, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### Introduction

Fayyaz and Lisa Karim, the Debtors in this chapter 11 case, seek to avoid as a preference the citation lien asserted by Bayview Loan Servicing, LLC ("Bayview") on a check (the "Check") which is the proceeds of the sale of the Karims' home. The parties have filed cross-motions for summary judgment in this adversary as to the avoidability of the asserted citation lien and the ultimate transfer of the Check to Bayview.

Two legal questions require answers. First, have the Karims, under the uncontested facts, met their burden in showing that there was an avoidable preferential transfer made when Bayview acquired a lien in or on the Check? Second, is Bayview entitled to the additional declaration that it seeks, namely that the transfer of possession of the Check from the Karims to it was not preferential? The answer to the first question is yes; the answer to the second is no.

As discussed below, the Karims' motion for summary judgment is granted. The lien on the Check created by the service of the citation did not take effect prior to the time the Karims

received the Check. Both Bankruptcy Code sections 101(54) and 547(e)[1] support this finding, and because the Karims acquired the Check within the 90 days prior to filing their bankruptcy petition, both the lien on the Check and the subsequent transfer of the Check itself are preferences and avoidable. This is true despite the arguments asserted by Bayview that the lien attached to the Check prior to its existence at the time the citation was served on the Karims. For all the reasons explained herein, Bayview's motion will be denied.

## **Background**

The facts material to the legal questions before the court are straightforward and undisputed. The Karims filed their bankruptcy case on March 3, 2017 and several months later filed this adversary proceeding.[2]

Bayview is the Karims' judgment creditor by virtue of a December 2015 state court judgment in the amount of $219,810.01. *Def.'s Ex. Statement of Uncontested Facts*, Docket No. 15–1, at 2, ¶ 3. On March 20, 2016, Bayview served a citation to discover assets on the Karims, but it did not serve the citation on any third parties either holding property of the Karims or indebted to the Karims. *Id.* at ¶ 4. The citation was repeatedly continued and remained in continuous, full effect during all material time periods. *Id.* at ¶ 5.[3]

The Karims sold their Will County, Illinois real property on December 19, 2016 and received the Check in the amount of $45,799.06 for their share of the sale proceeds on that same day. *Id.* at ¶ 6; *Def.'s Ex. Decl.*, Docket No. 15–2, at 4, ¶ 24. There is no evidence in the record showing any preceding agreement for the sale of the land or otherwise showing that any third

---

[1] All statutory references are to Title 11 of the United States Code unless otherwise indicated.
[2] The case was first filed under chapter 13 but was later converted to one under chapter 11 on October 18, 2017.
[3] There are two paragraphs numbered "5" in Bayview's statement; both are being referred to by this citation.

party was indebted to the Karims with respect to the land. The transaction simply occurred, and the Karims received the Check, which had been made payable to both of them. *Def.'s Ex. Statement of Uncontested Facts*, Docket No. 15–1, at 3, ¶ 11.

Bayview obtained an order for turnover of the Check in state court on January 31, 2017. *Id.* at ¶ 9. On February 3, 2017, the Karims delivered the unendorsed Check to Bayview's counsel pursuant to the state court turnover order. *Id.* at ¶ 10. Thirty days later, the Karims filed their bankruptcy petition.

## Discussion[4]

### I. Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Neither party contests the facts in this matter; thus, summary judgment is appropriate, as the issues before the court are purely legal.

### II. Relevant Statutory Provisions.

The court must examine both Illinois law regarding citations to discover assets and certain sections of the Bankruptcy Code.

#### a. Proper Service of an Illinois Citation Creates a Lien in the Debtors' Nonexempt Personal Property.

Illinois law provides that the proper service of a citation to discover assets creates a "lien" binding the "nonexempt personal property" of the judgment debtor. 735 Ill. Comp. Stat.

---

[4] The court has statutory jurisdiction to decide this matter, 28 U.S.C. §§ 1334(a)–(b), 157(a), (b)(2)(F), and there are no constitutional impediments to its so doing. *See In re Pantazelos*, 543 B.R. 864, 873 (Bankr. N.D. Ill. 2016).

3

5/2–1402(m).[5] The concept of a lien is the same under Illinois law as it is under federal bankruptcy law. *See N.C. ex rel. L.C. v. A.W. ex rel. R.W.*, 305 Ill. App. 3d 773, 775, 713 N.E.2d 775, 776 (1999); *Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673, 676, 619 N.E.2d 235, 237 (1993); *accord* 11 U.S.C. § 101(37).[6] A tangible check, as opposed to the intangible rights it may represent or evidence, is itself nonexempt personal property under Illinois law because, for instance, a check may be the object of the tort of conversion, indicating that Illinois law treats the tangible check as valuable personal property. 810 Ill. Comp. Stat. 5/3–104(b), (e), (f); *id.* 5/3–420(a); *Hayes v. Massachusetts Mut. Life Ins. Co.*, 125 Ill. 626, 633, 18 N.E. 322, 325 (1888). Thus, the Illinois citation lien attached to the Check when it became the Karims' personal property. The question is: did attachment occur within the 90-day preference period, thereby making the lien attachment an avoidable preference?[7]

### b.  Section 547(b) Governs Preferential Avoidance Actions.

Section 547 of the Bankruptcy Code provides that the trustee may avoid certain transfers that occur during the 90 days prior to the filing of the Debtors' bankruptcy petition.[8] The Code states that a "transfer" is avoidable as a preference if it was "of an interest of the debtor in property" and:

> [I]t (1) was made to or for the benefit of a creditor, (2) was for or on account of an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within 90 days before the date of the filing of the petition, and (5) allowed the creditor to receive more than it otherwise would have.

---

[5] The use of any post-judgment execution tool, such as the citation to discover assets, assumes, of course, that there is a personal debt owed to the creditor that has been successfully liquidated to judgment.
[6] It is axiomatic that a lien is an interest in property. *See Matter of Merchants Grain, Inc. By & Through Mahern*, 93 F.3d 1347, 1352 (7th Cir. 1996); *Manago By & Through Pritchett v. Cty. of Cook*, 2017 IL 121078, ¶ 18, ___ N.E.3d ___.
[7] Assuming that the date of the attachment, and not the date of perfection, governs as the date of the transfer under section 547(e).
[8] Here, the Karims fulfill the role of the trustee as debtors-in-possession. *See* 11 U.S.C. § 1107(a).

*Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 564 (7th Cir. 2001) (citing 11 U.S.C. § 547(b)). The only element in dispute in this case is whether the transfer occurred within 90 days before the date of the filing of the petition.[9]

### c. Section 101(54) Preliminarily Governs When the Transfer Occurred.

Whether and when a transfer has occurred is a question of federal law, being governed in the first instance by section 101(54). *See Barnhill v. Johnson*, 503 U.S. 393, 397–98 (1992) (citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70 (1945)). Under section 101(54), a transfer occurs if, for example, a lien is created or if an interest in property has otherwise been parted with, whether voluntarily or involuntarily. 11 U.S.C. § 101(54)(A), (D). To determine when those events happen under section 101(54), however, state law must be consulted, since, absent a controlling federal interest, the property interests capable of being transferred are "creatures of state law." *Barnhill*, 503 U.S. at 398; *Butner v. Johnson*, 440 U.S. 48, 55 (1979).

### d. Section 547(e) Ultimately Governs When the Transfer Occurred.

Section 547(e) specifically makes the concept of perfection, which tends to govern only priority between competing creditors, *see Matter of Freedom Grp., Inc.*, 50 F.3d 408, 411 (7th Cir. 1995), relevant to determining the date of the transfer between the immediate parties for purposes of applying the preference provisions in the Bankruptcy Code. *See* 11 U.S.C. § 547(e)(2). In deeming the date of perfection the relevant date of the transfer between the parties in certain scenarios, the section aims to "combat secret liens," *In re Lazarus*, 478 F.3d 12, 18 (1st Cir. 2007), thereby discouraging creditors "from waiting until the debtor's financial troubles become all-too-manifest before recording security interests." *In re Arnett*, 731 F.2d 358, 363 (6th Cir. 1984).

---

[9] The court concludes that the uncontested facts satisfy the Karims' burden on the remaining elements.

First, section 547(e)(1)(B) states as follows:

[A] transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

11 U.S.C. § 547(e)(1)(B).

Sections 547(e)(2) and (e)(3) then interact and apply in the following manner, as noted by one court:

Putting [these sections] together, one should conclude that a transfer takes place for bankruptcy purposes on the *later* of four dates:

(1) The date when it is . . . effective between the transferor and transferee if it is perfected within [30] days [§ 547(e)(2)(A)];

(2) If not perfected within [30] days, then the date when it is perfected [§ 547(e)(2)(B)]; but

(3) If not perfected prior to the petition or within [30] days of [effectiveness between the transferor and transferee], then the date immediately before the filing of the petition [§ 547(e)(2)(C)]; but

(4) *In no case is the transfer effective* ". . . until the debtor has acquired rights in the property transferred" [§ 547(e)(3)].

*In re Dunn*, 56 B.R. 275, 278 (Bankr. M.D. La. 1985) (emphasis added). As a result, a transfer cannot occur under section 547(e) until the debtor actually acquires rights that are capable of being transferred.[10]

---

[10] While section 547(e)(3) was aimed at two contrary holdings in the Article 9 context, *see*, *inter alia*, *DuBay v. Williams*, 417 F.2d 1277, 1287–88 (9th Cir. 1969) (holding that an earlier date of perfection-by-filing governed as the date of the transfer under the then-existing analogue to section 547(e)), the plain and unambiguous text of the provision applies to all transfers, not just to consensual transfers of liens in certain types of collateral. *See, e.g.*, *In re Gull Air, Inc.*, 90 B.R. 10, 16 (Bankr. D. Mass. 1988). Moreover, section 547(e)(3) arguably explicitly reinforces what is already implicit in the language of section 547(e)(2). *See, e.g.*, David Gray Carlson, *Security Interests in the Crucible of Voidable Preference Law*, 1995 U. ILL. L. REV. 211, 235 (1995) (noting that section 547(e)(2)(A), in referencing the concept of attachment under the U.C.C., "sinks the holding in *DuBay v. Williams*," further noting that "for good measure, section 547(e)(3) was also driven into the heart of DuBay to assure that it could not rise unwelcome from its tomb"); *see also Matter of Freedom Grp., Inc.*, 50 F.3d 408, 412 (7th Cir. 1995) ("[Section 547(e)(2)(B)] is intended for the case in which the transfer occurs first, and is later perfected.").

6

### III. On What Date Did the Transfer Occur?

The Karims maintain that the avoidable transfer occurred on the date they received the Check at the closing of the sale of their real property. Bayview contends that the transfer is not avoidable because it occurred on the date the citation was served on the Karims and therefore was well outside the preference period.

As discussed above, the question as to whether and when a transfer occurred is one of federal law. Looking first at section 101(54), the court must turn to state law to determine if a "lien" was "creat[ed]," or, stated somewhat less elegantly, if an "interest in property" was "involuntar[ily] . . . part[ed] with." *See Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002). If the answer is yes, then there was a transfer under section 101(54). Next the court must apply section 547(e) to see how, if at all,[11] this result is changed by that section, since section 547(e) makes the concept of "perfection" of the lien relevant to determining when a transfer of property between the parties is *deemed* to have occurred for purposes of pinpointing when a transfer happened under the preference avoidance provisions of the Bankruptcy Code. *See* 11 U.S.C. § 547(e).

**a. Under Section 101(54), the Transfer was Made on December 19, 2016.**

The properly served citation created a lien on the judgment debtors' "nonexempt personal property" in the possession or control of the Karims. 735 Ill. Comp. Stat. 5/2–1402(m)(1) ("in the possession or control of the judgment debtor"), (m)(2) ("in the possession or control of the third party"); *Podvinec v. Popov*, 168 Ill. 2d 130, 134, 658 N.E.2d 433, 435 (1995) ("The service of the citation to discover assets on [the judgment debtor] created a general lien in favor of [the

---

[11] Unless one of section 547(e)'s perfection-timing provisions is triggered, the date that the transfer took effect between the immediate parties will govern as the date of the transfer for preference avoidance purposes. *See, e.g.*, *Matter of Freedom Grp., Inc.*, 50 F.3d 408, 411 (7th Cir. 1995); *In re Gurs*, 34 B.R. 755, 756–57, 758 (B.A.P. 9th Cir. 1983); *In re Cox*, 10 B.R. 268, 271 (Bankr. D. Md. 1981).

judgment creditor] on the property of [the judgment debtor]."); *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873, 878, 697 N.E.2d 788, 791 (1998) ("When the citation is served, it creates a judgment lien upon all *personal property belonging to the judgment debtor* in the possession or control of the judgment debtor or third party.") (internal quotations omitted) (emphasis added). Notably, the citation statute allows for the citation lien to attach to or bind after-acquired property as well, that is, nonexempt personal property interests of the judgment debtor that were not in existence at the time of the original service of the citation. 735 Ill. Comp. Stat. 5/2-1402(m)(1), (2); *In re Van Der Laan*, 556 B.R. 366, 379 (Bankr. N.D. Ill. 2016); *Laborers' Pension Fund v. Dominic Jr., Inc.*, No. 02 C 3321, 2003 WL 21310282, at *2 (N.D. Ill. June 5, 2003).

Bayview argues that, even as to after-acquired property, the lien was effective from the date of service, attaching to and binding after-acquired personal property interests from that date. Because of this, it argues, a "lien" was "creat[ed]" on March 20, 2016, the date the citation was served on the Karims, and therefore a transfer occurred on that date under section 101(54). The court, however, cannot accept Bayview's contention.

A lien can only bind property that is in existence; liens do not "subsist where there is no property to be bound." *Merchants Nat. Bank of Aurora v. Olson*, 27 Ill. App. 3d 432, 434, 325 N.E.2d 633, 634 (1975).[12] Some courts have gone so far as to call this point obvious. *In re Scarpino*, 113 F.3d 338, 342 (2d Cir. 1997) (discussing New York law).[13] This basic principle

---

[12] *See also In re Allard*, 196 B.R. 402, 410 (Bankr. N.D. Ill.), *aff'd sub nom. Great S. Co. v. Allard*, 202 B.R. 938 (N.D. Ill. 1996); *Rochford v. Laser*, 91 Ill. App. 3d 769, 774, 414 N.E.2d 1096, 1101 (1980); *Lehman v. Cottrell*, 298 Ill. App. 434, 440, 19 N.E.2d 111, 114 (1939); *Falls v. Silver Cross Hosp. & Med. Centers*, No. 13 C 695, 2013 WL 2112188, at *3 (N.D. Ill. May 15, 2013) (noting that a lien is not a "brooding omnipresence in the sky") (internal quotations omitted).

[13] *See also* David Gray Carlson, *Simultaneous Attachment of Liens on After-acquired Property*, 6 CARDOZO L. REV. 505, 506 (1985) ("If a lien is an encumbrance on the debtor's property, the lien obviously cannot exist until the debtor has property.").

8

applies, for instance, in the context of judgment liens on after-acquired real property. *Breed v. Gorham*, 108 Ill. 81, 85 (1883) (stating that a judgment gives rise to a lien on later-purchased property only "from the time [it is purchased]"); *see also Gorham v. Farson*, 119 Ill. 425, 439, 10 N.E. 1, 5 (1887) (noting that "the lien *attached the moment* that Colby obtained his interest") (emphasis added). It applies where an execution lien extends to after-acquired personal property. *In re Darwin*, 117 F. 407, 408–09 (6th Cir. 1902); David Gray Carlson & Paul M. Shupack, *Judicial Lien Priorities under Article 9 of the Uniform Commercial Code*, 5 CARDOZO L. REV. 287, 344–45 (1985). The consensual Article 9 lien in after-acquired personal property is no different. *See* U.C.C. § 9–203(b)(2) & cmt. 6; *see also id.* § 9–322 cmts. 5 & 6 (discussing priority in the context of two liens simultaneously attaching to after-acquired property). Therefore, the court holds that no lien bound the Karims' interest in the Check before it became their personal property, and a transfer did not occur under section 101(54) on March 20, 2016, or at any time up until the point that the Karims obtained rights to or an interest in the Check.

To avoid this result, Bayview argues that, on March 20, 2016, the citation lien bound the Karims' "expectancy" of receiving the Check from the sale of their house. There are no facts showing anything other than that the Karims owned legal title in fee simple to the real property on that date.[14] Bayview cites no authority supporting the proposition that the mere *possibility* or *expectation* of receiving property (the proceeds) from the sale of one's asset in the future is *itself* present "nonexempt personal property" capable of being bound by the citation lien.[15]

---

[14] The citation lien never attached to the real property because the citation statute provides that the lien binds only personal property. 735 Ill. Comp. Stat. 5/2-1402(m) ("The lien binds nonexempt personal property . . . .").

[15] Even if there were evidence that the Karims expected or hoped to acquire money in exchange for their land at some point prior to the preference period, it is a fundamental principle that such an expectation or hope, without more, would not have been a then-existing interest in property. *See, e.g.*, RESTATEMENT (THIRD) OF TRUSTS §§ 40–41 & 41 cmts. a–b (2003) (stating the rule that any possible interest in property

9

Bayview's cited cases support only the proposition that, when the citation is served on the judgment debtor, the citation lien binds, or attaches to, the judgment debtor's choses in action or other intangible personal property, and it also attaches to the proceeds of those choses or to the proceeds of other intangible personal property.[16] The cases also support the proposition that, when a citation is served on third parties or is otherwise spread of record so as to affect third parties, the citation lien can bind funds owed to the judgment debtor by those third parties.[17] Although the court does not disagree with these propositions, no evidence has been presented by Bayview that the Karims had a chose in action, or any other intangible personal property interest, on March 20, 2016. Further, no evidence has been presented showing that the citation was served on any third parties or otherwise spread of record, nor is there any evidence that any third parties owed money to the Karims on account of the land sale prior to December 19, 2016. Therefore, no lien attached, and no transfer under section 101(54) occurred, on March 20, 2016 or any other date prior to December 19, 2016.

Under section 101(54), the transfer took place on December 19, 2016, when the Karims first acquired the Check, because that is when they first acquired rights to or an interest in the Check, and that is when Bayview's lien attached. Thus, the date of the transfer under section 101(54) was within the 90-day preference period.

---

will suffice for satisfying the requirement that a trust contain property; noting that "[b]y all traditional and *current concepts* of property, expectancies are not property interests; stating further that "[t]he rule of this Section applies even though the would-be settlor once owned or has *reason to expect*, but *no legally enforceable right*, to acquire the thing or an interest in it in the future") (emphasis added).

[16] *In re Sarah Michaels, Inc.*, 358 B.R. 366 (Bankr. N.D. Ill. 2007), *aff'd sub nom. Helms v. Certified Packaging Corp.*, 551 F.3d 675 (7th Cir. 2008); *In re Porayko*, No. 09 B 29262, 2010 WL 1253949 (Bankr. N.D. Ill. Mar. 30, 2010), *aff'd sub nom. Crane v. Porayko*, No. 10-CV-2630, 2012 WL 2702997 (N.D. Ill. July 3, 2012), *aff'd sub nom. In re Porayko*, 705 F.3d 703 (7th Cir. 2013).

[17] *Podvinec v. Popov*, 168 Ill. 2d 130, 658 N.E.2d 433 (1995); *Nat'l Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, 83 N.E.3d 44 (cited by Bayview but notably not dealing with the lien provision of the statute).

    **b. Under Section 547(e), the Transfer was Made no Earlier than December 19, 2016.**

Bayview repeatedly emphasizes that its lien was perfected on March 20, 2016, outside the preference period, when it served the citation. Even assuming Bayview is correct, its potentially earlier date of perfection does not mean that the transfer of the lien in the Check occurred outside of the preference period.

The Karims did not acquire rights in the Check capable of being transferred until December 19, 2016; therefore, the transfer under section 547(e) could not have occurred until that date. *See* 11 U.S.C. § 547(e)(3). This is true even if Bayview's lien were perfected under section 547(e)(1)(B) prior to that date, since sections 547(e)(2) and (e)(3) make it clear that an earlier date of perfection does not govern as the date of the transfer under section 547(e).

The Karims' motion for summary judgment will be granted, with Bayview's motion being denied on this point. The transfer occurred under section 101(54) on December 19, 2016, when the Karims acquired the Check. Even if Bayview were perfected outside of the preference period when it served the citation on the Karims, that earlier date would not govern as the date of the transfer under section 547(e). The transfer of the lien on December 19, 2016 is therefore avoidable as a preference, since the transfer happened within the preference period.

    **IV.    Bayview's Receipt of the Check Itself is Avoidable as a Preference.**

Bayview asks the court to determine whether or not the transfer of the Check itself on February 3, 2017, after the entry of the state court turnover order, was itself a preference. The Karims have not sought this determination, did not make any argument on the subject, and are not requesting any relief based on a theory that the transfer of the Check was itself preferential; nevertheless, in deciding whether to grant Bayview its requested relief, the court must decide whether or not, based on the uncontested facts, the transfer of the Check itself was preferential

Case 17-00380    Doc 21    Filed 03/09/18    Entered 03/09/18 08:50:43    Desc Main
              Document      Page 12 of 13

and therefore subject to avoidance. The court concludes that the transfer of possession of the Check is an avoidable preference.[18]

While the elements of a preference are present with respect to the February 3, 2017 transfer of the Check to Bayview, no defense has been presented by Bayview which would defeat the preferential status of that transfer. The transfer was of an interest of the debtor in property because it removed from the estate an asset with value for creditors. While this statement would not be true if Bayview's lien in or on the Check remained, *see In re Norwalk Furniture Corp.*, 428 B.R. 419, 427 (Bankr. N.D. Ohio 2009),[19] that lien will be avoided once an appropriate final order is entered in conformity with this opinion, and it would be needlessly circuitous to force the parties to wait for the order avoiding the lien to be entered before seeking separate relief on this ground, especially since Bayview has asked explicitly for a ruling on this issue.

Similarly, on the facts of this case, the transfer allowed Bayview to receive more than it otherwise would have in a chapter 7 liquidation. Again, while this would not be true if the lien had remained in or on the Check, *see In re El Paso Refinery, L P*, 171 F.3d 249, 255 (5th Cir. 1999),[20] that lien will be avoided pursuant to the court's order.

Therefore, much like the transfer of the lien in the Check, the transfer of the Check itself is avoidable as a preference. Bayview's motion for summary judgment on this point is therefore denied.

---

[18] All of section 547(b)'s elements are met with respect to the transfer. Only two are considered in detail below in light of the facts of this case.

[19] ("It is . . . difficult to discern how . . . a creditor receiving its own collateral diminishes the amount of estate assets available for distribution to the debtor's other creditors.").

[20] ("A creditor who merely recovers its own collateral receives *no more as a result than it would have received anyway* had the funds been retained by the debtor, subject to the creditor's [lien].") (emphasis added).

**<u>Conclusion</u>**

For the reasons stated above, the Karims' motion for summary judgment is granted. Bayview's motion for summary judgment is denied. A separate order will issue in conformity with this opinion.

Dated:  March 9, 2018

_____
DEBORAH L. THORNE
UNITED STATES BANKRUPTCY JUDGE